IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

EDWARD J. BARKES, JR. (N37639),

              Plaintiff,

     v.

CHARLES GRAHAM, PETER BEEBE,
and ERIC NEAL,

              Defendants.

Case No. 11 C 5392

Hon. Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Pro se Plaintiff Edward J. Barkes, Jr. ("Plaintiff"), an Illinois Department of Corrections ("IDOC") inmate, has brought a civil rights suit pursuant to 42 U.S.C. § 1983. Plaintiff alleges that he was assaulted by Defendant Kendall County Sheriff's Deputy Charles Graham ("Graham") on August 30, 2010. Defendants IDOC correctional officers Peter Beebe ("Beebe") and Eric Neal ("Neal") allegedly stood idly by during the assault, and all Defendants purportedly failed to provide Plaintiff medical care after the assault. Pending before the Court are Defendants' Motions for Summary Judgment [Dkt. Nos. 43, 51].

## I. BACKGROUND

Plaintiff is presently serving a 56-year prison sentence in the IDOC. Dkt. No. 77 at 1. On August 30, 2010, Plaintiff was transferred from the IDOC to the Kendall County Courthouse for a hearing on his state postconviction petition. *Id.* at 2.

Defendants IDOC officers Neal and Beebe transported Plaintiff by van to the courthouse. Dkt. No. 77-1 at 10. Plaintiff was restrained in ankle shackles, handcuffs, chains around his body, and a blackbox around his handcuffs. *Id*. He characterized this as "fully restrained" — "You have no movement at all. You can't even go to eat or nothing." *Id*. Plaintiff was in the restraints through the entire incident.

Plaintiff arrived at the courthouse at 8:30 a.m. and was placed in a holding cell. Dkt. No. 77 at 2. The incident at issue occurred shortly before 10:00 a.m. Plaintiff claims that he had a verbal disagreement with Deputy Graham, who then responded by giving him the middle finger. Dkt. No. 62 at 4. Graham allegedly lost his temper and then grabbed Plaintiff by the throat and moved him to an attorney client room. *Id*. Plaintiff claims that he had a "walking chain" on that Graham should have used if he needed to be relocated to a new cell. Dkt. No. 66 at 2. Plaintiff also claims that he was thrown into a stool backwards once he was placed in the attorney client room. *Id*. Plaintiff claims that he sought medical attention and received an x-ray when he was back at his prison the next day. *Id*. at 12. However, Plaintiff provides no evidentiary support for the assertion that he needed medical attention.

Defendants agree that Plaintiff was relocated from a holding cell to an attorney client room and that Graham held Plaintiff by

the shirt collar.  Dkt. No. 77 at 4.  They counter, however, that Plaintiff was verbally disruptive, screaming at other detainees and the correctional officers.  *Id*. at 3-4.  Plaintiff refused to follow officer commands and was insubordinate to them.  *Id*. Graham denies that he used any improper force.

Defendants have submitted video surveillance of the incident. Dkt. No. 77-4.  There is no audio with the video, but the video shows the incident.  Plaintiff claims that the video has been altered, but he provides no evidence for this claim.  The video's uninterrupted time stamp suggests that there has been no alteration to the video.  Most notably to the Court, the images on the videos are continuous.  There is no "jumping" of individuals or items in the video that one would expect if the video had been altered.  The Court concludes it is appropriate to rely upon the video.

The video shows three camera views:  one outside of Plaintiff's original holding cell, and two cameras down the hallway to the attorney client room.  The first video spans 9:54:37 a.m. through 9:56:09 a.m.  Graham appears and begins talking to Plaintiff through an apparent window area in the cell for a few moments.  At this time, Graham is outside the cell, Plaintiff is inside, and the cell door is shut.

Graham then waves down a hallway that is next to the cell and one of the two other Defendants appears (the Court cannot determine which).  It is clear that Graham and the other Defendant officer

are speaking through the opening to Plaintiff.  The third Defendant appears, and the door to the cell is opened.

Graham, followed by the other two Defendants, stands in the doorway of the open cell and speaks to Plaintiff.  Plaintiff is in his restraints and is standing.  Plaintiff turns his back and walks away from Graham and sits down on a chair or bench.  This is a clear sign of insubordination.  Graham enters into the cell and continues to speak to Plaintiff for approximately ten seconds.

Graham then leaves the cell and gives a wave to one of the other Defendants who enters into the cell to speak to Plaintiff as he remains sitting in the cell.  At this time, a second Kendall County deputy (who is not named as a defendant) enters onto the scene.  Graham, while standing in the doorway, continues talking to Plaintiff while the other officer is inside the cell.  After a few seconds, Graham walks into the cell and is approximately three to five feet from Plaintiff.  He continues talking to Plaintiff while Plaintiff remains in his seat.

Graham raises his hand to Plaintiff, apparently telling him to stand up.  Plaintiff does not stand up and so Graham picks Plaintiff up and removes him from the cell.  Graham, with two hands, pulls Plaintiff by the front of his shirt to his feet, and then begins to walk him to the hallway.  At that point, Graham puts his left hand on the back of Plaintiff's neck and has his right hand on Plaintiff's chest.  The three other officers are watching

Graham remove Plaintiff from the cell as Graham walks Plaintiff into the hallway.



Graham entering the cell area at 9:54:53.



Graham speaking to Plaintiff in his cell at 9:54:54.



Graham entering Plaintiff's cell with Beebe and Neal at 9:55:20.



Graham, Beebe and Neal speaking to Plaintiff at 9:55:23.



Graham gesturing to another officer to speak to Plaintiff, who is now visible in the cell window at 9:55:42.



Either Officer Beebe or Neal speaks to Plaintiff while a second sheriff's deputy comes on the scene at 9:55:44.



Graham continues to speak to Plaintiff at 9:55:47.



Graham again entering into the cell at 9:55:56.



Graham again gesturing towards Plaintiff at 9:55:57.



Graham approaching Plaintiff at 9:55:59.



Graham approaching Plaintiff to remove him from the cell at 9:56:00.



Graham beginning to remove Plaintiff from the cell, holding him by the shirt, at 9:56:00.



Graham continuing to remove Plaintiff from cell while holding him by the shirt at 9:56:01.



Graham continuing to remove Plaintiff from cell at 9:56:01.



Graham moving Plaintiff out of cell area with his left hand on back of Plaintiff's head and right hand on Plaintiff's chest at 9:56:02.

Camera Two shows a westward view of the hallway next to Plaintiff's cell. The attorney client room where Plaintiff is relocated is down this hallway. The video runs from 9:55:02 through 9:56:34. Camera three shows the hallway view from the opposite direction. It runs from 9:55:19 through 9:56:33.

Cameras Two and Three show Graham moving Plaintiff down the hallway while holding him around the neck. Graham places Plaintiff against the wall while gathering his keys to open the attorney client room. Another individual appears from inside the attorney client room and is removed. Notably, Plaintiff's head does not slam against the hallway wall when he is held against the wall by Graham prior to being placed in the attorney client room.

The camera does not show fully into the attorney client room. Graham places Plaintiff in the room and then locks the door. Graham and the Plaintiff are out of view in the attorney client room for approximately two to three seconds.



Graham moving Plaintiff into the hallway from cell area at 9:56:06



Graham continuing to move Plaintiff down the hallway at 9:56:09.



Graham putting Plaintiff on the wall next to the attorney client room while he begins to look for his keys to the room at 9:56:10.



Graham has shifted his hands so that he is now holding Plaintiff with his left hand while reaching for the keys to the attorney client room in his right hand. Other officers, including Beebe and Neal, look on at 9:56:11.



Graham has opened the attorney client room, with Beebe,
Neal and another officer looking on at 9:56:19.



Graham begins to place Plaintiff in the attorney client
room with Neal, Beebe and another officer looking on at
9:56:20.



Graham putting Plaintiff in the attorney client room from
opposite view with Neal and Beebe watching. Individual
in black shirt by door is unknown individual who was
previously in the attorney client room. Pictured at
9:56:20.



Graham having placed Plaintiff in attorney client room is
moving back out of the room. There is no camera image in
the record showing inside the attorney client room.
Graham's black uniform and Plaintiff's white T-shirt are

visible in the bottom right corner of picture.  Graham is out of camera view with Plaintiff in the attorney client room for approximately two to three seconds.  Picture is at 9:56:24.



Graham locks Plaintiff in the attorney client room at 9:56:27.

## II.  <u>ANALYSIS</u>

"The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a); *Wackett v. City of Beaver Dam, Wis.*, 642 F.3d 578, 581 (7th Cir. 2011).  Presented evidence must be competent evidence that would be admissible at trial.  *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009) (citations omitted).  The moving party has the initial burden of showing there is no genuine dispute and that he is entitled to judgment as a matter of law.  *Carmichael v. Vill.*

*of Palatine, Ill.*, 605 F.3d 451, 460 (7th Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008)).  If the moving party meets this burden, the non-moving party must respond with specific facts showing that the jury could find in his favor, and that there is a genuine dispute that needs to be adjudicated at trial. *Carmichael*, 605 F.3d at 460 (citing *Anderson*, 477 U.S. at 251-52; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Wheeler*, 539 F.3d at 634).  A genuine dispute is one that could change the outcome of the suit, and contains evidence sufficient to allow a reasonable jury to return a favorable verdict for the non-moving party. *Spivey v. Adaptive Mktg. LLC*, 622 F.3d 816, 822 (7th Cir. 2010) (citations omitted).

As an initial matter, the Court notes that Plaintiff has withdrawn his claims against officers Beebe and Neal, claiming that he had insufficient time to respond to their Summary Judgment Motion.  Dkt. No. 61.  However, as the Court previously denied Plaintiff's request that it recruit counsel on his behalf, Dkt. No. 4, 32, 39, the Court has reviewed the record in full and evaluated all of Plaintiff's claims against all Defendants.  The Court concludes that summary judgment is appropriate and continues with its belief that counsel would not have changed that result. In specific, as explained below, the videotape evidence refutes Plaintiff's claims.  The Court's reliance on the videotape evidence

also addresses defendant Graham's request to strike Plaintiff's declaration. Dkt. No. 75. In this situation, it is proper to rely on the videotape for what happened in the case, and therefore the motion to strike the declaration is denied as moot.

Turning first to Plaintiff's claim that Graham used improper force and Neal and Beebe failed to intervene to stop the force. As to Graham, "correctional officials may use force in good-faith to restore force to maintain and restore discipline" but they cannot use it "maliciously and sadistically to cause harm." *Gomez v. Randle*, 680 F.3d 859, 864 (7th Cir. 2012) (citing *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992)). The malicious and sadistic use of force must be "wanton." *Gomez*, 680 F.3d at 864 (citing *Harper v. Albert*, 400 F.3d 1052, 1065 (7th Cir. 2005)). Regarding Neal and Beebe, they may be held liable if they had a reason to believe that Graham would use improper force and had a reasonable opportunity to stop it. *Lewis v. Downey*, 581 F.3d 467, 472 (7th Cir. 2009).

Typically, the Court would likely be faced with a swearing contest between the parties. Plaintiff is claiming that he was wrongfully assaulted while the defendants deny the claim. The general rule is that a Court must evaluate the evidence in the light most favorable to the non-moving party (the Plaintiff) with all reasonable inferences made in his favor. *Smith v. Sangamon County Sheriff's Dep't.*, 715 F.3d 188, 191 (7th Cir. 2013) (citing

*Lewis v. Downey*, 581 F.3d 467, 472 (7th Cir. 2009)). The Court also recognizes that it may not weigh conflicting evidence or make credibility determinations, but the party opposing summary judgment must point to evidence demonstrating a genuine dispute of material fact. *Omnicare, Inc. v. UnitedHealth Group, Inc.*, 629 F.3d 697, 705 (7th Cir. 2011) (citations omitted). As Plaintiff is a competent witness to testify about what happened to him, this type of dispute would traditionally have to be resolved before a jury.

However, when there is irrefutable evidence such as a video recording of what actually happened, the Court should not blindly accept the non-moving party's story. When the non-moving party's version of events "is so utterly discredited by the record that no reasonable jury could have believed him[, the Court] should not [] rel[y] on such visible fiction; it should [] view[] the facts in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 380-81 (2007).

As mentioned above, Plaintiff challenges the validity of the videotape. His argument that the video has somehow been altered is frivolous. As explained, there is an uninterrupted time stamp for the events shown on the video. Furthermore, there is no continuity problem with images shown on the cameras.

*Harris* instructs that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a Court should

not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id*. at 380. The videotape shows that Plaintiff version of events is "blatantly contradicted by the record" and no reasonable jury would believe his version of events. *Id*. *Harris* requires the Court to recognize this at summary judgment. Plaintiff claims that Graham became mad at him for no reason, made inappropriate gestures to him, and then physically assaulted him, including throwing him into a chair in the attorney client room.

However, the videotape shows a very different situation. Plaintiff failed to listen to Graham and other officers when they first confronted him in his cell. Plaintiff then retreated into the cell, sitting down, and failed to come out when they instructed him to do so on several occasions. This is insubordination. Graham was required to enter into the cell and physically remove Plaintiff from his seat. This occurred because Plaintiff failed to stand up and walk out of his cell. The videotape shows Graham using force to control Plaintiff while also taking care not to slam his head into the wall along the hallway. Graham acted in a measured and controlled fashion to restore order and discipline after Plaintiff's insubordination.

The Court recognizes that the video does not show fully into the attorney client room where Plaintiff claims that Graham threw him into a chair. However, Graham was with Plaintiff in that room

and out of view for only two seconds.  Furthermore, the Court recognizes that Graham had the ability to use some level of force to subdue the insubordinate Plaintiff.  "Even if 'it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable' an error in judgment does not convert a prison security measure into a constitutional violation." *Guitron v. Paul*, 675 F.3d 1044, 1046 (7th Cir. 2012) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).  It is plain that Graham used force to restore order.  There was no malicious and sadistic use of force in this case.  Thus, Defendant Graham is entitled to summary judgment on the claim of improper use of force.

Additionally, as there is no claim against Graham, Plaintiff cannot proceed with a claim against Neal and Beebe for failing to intervene to stop Graham.  "In order for there to be a failure to intervene, it logically follows that there must exist an underlying constitutional violation. . . ." *Harper v. Albert*, 400 F.3d 1052, 1064 (7th Cir. 2005).  There is no underlying constitutional violation by Graham, and so there can be no violation by Neal and Beebe.

To succeed on deliberate indifference claim, Plaintiff must prove that Defendants were intentionally indifferent to an objectively serious medical need or condition — negligence, gross negligence or medical malpractice is insufficient. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Duckworth v. Ahmad*, 532 F.3d

675, 679 (7th Cir. 2008); *Guzman v. Sheahan*, 495 F.3d 852, 857 (7th Cir. 2007); *Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007). Plaintiff must demonstrate that he had: (1) an objectively serious medical condition, and (2) Defendants acted with the subjective deliberate indifference mindset to the condition. *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011) (citations omitted).

The video shows that Plaintiff did not suffer from any type of objectively serious injury while being moved from his cell to the attorney client room. Notably, when Graham placed Plaintiff against the wall, he used enough care to use force to control Plaintiff but impressively did not use so much force that Plaintiff's head slammed against the wall.

Plaintiff argues that his injury occurred off camera in the attorney client room. Yet Plaintiff provides no evidence in the record to show that he suffered from an objectively serious medical condition. He states that he had an x-ray, yet there are no documents to support that fact. A jury will be faced with the fact that Plaintiff misrepresented his situation (a determination this Court is required to note at summary judgment under *Harris*), an appropriate amount of force was used under the circumstances, and there is no evidence to show that he was ever injured. Under those circumstances, the Court concludes that it must grant summary judgment in Defendants' favor as well as to Plaintiff's claim that

Defendants acted with deliberate indifference to an objectively serious medical injury. *Harris* requires this result.

### III.  <u>CONCLUSION</u>

For the reasons stated herein, the Defendants' Motions for Summary Judgment [Dkt. Nos. 43, 51] are granted.  Defendant Graham's Motion to Strike [Dkt. No. 75] is denied as moot.  The Clerk is instructed to enter a Rule 58 Judgment in favor of Defendants against Plaintiffs.  Civil Case Terminated.

**IT IS SO ORDERED.**

_____
     Harry D. Leinenweber, Judge
     United States District Court

Date: July 19, 2013